STEPHEN A. SHUFELT v. BENJAMIN MOORE AND WARREN COOLIDGE.

*Bills and notes—Cosureties.*

Where, after the rendition of a judgment against the maker and accommodation indorser of a note, the maker requests the indorser to indorse a second note to raise money to pay the judgment, which he refuses to do unless the maker secures a co-indorser, and at the request of the maker a third person indorses the second note with the original indorser, the relation of the indorsers to the note is that of cosureties.

Error to Oceana. (Dickerman, J.) Argued October 27, 1892. Decided December 2, 1892.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*L. G. Rutherford,* (*C. B. Stevens,* of counsel), for appellant.

*M. H. Brooks,* for defendant Coolidge.

McGRATH, C. J.    Plaintiff appeals from a judgment entered upon the following findings:

"*First.*    That on the 3d day of May, 1888, judgment was rendered in this court in favor of Albert S. White, Fred J. Russell, and James K. Flood against the above-named defendants for the sum of five hundred and ten and 59-100 dollars, upon a note given to plaintiffs in that cause by defendant Moore, and signed by defendant Coolidge as an accommodation indorser.

"*Second.*    That soon after the rendering of said judgment in this court the defendant Moore requested defendant Coolidge to sign another note with him, to enable him to get the money to pay and satisfy the above-named judgment; that defendant Coolidge refused to sign any note unless defendant Moore obtained some one else to sign with him; that Moore then asked plaintiff, Shufelt, to sign with him and defendant Coolidge, and that plaintiff did so in some shape, and defendant Moore, with the money obtained upon said note, paid and satisfied said judgment; that defendant Coolidge would not have signed said note but for the judgment having been rendered against him and Moore as aforesaid, and that he refused to sign the last-named note unless some one signed with him; that Moore asked Shufelt to sign, and he did so on such request, and not at request of Coolidge; and that nothing was said in any way limiting the liability of either party.

"*Third.*    That one or more notes were signed by the three parties in renewal of the one last given, and finally one was given for the same purpose, in the words and figures following:

"'$584.00.                    HART, MICH., August 4, 1890.

"'Ninety days after date I promise to pay to the order of Oceana County Savings Bank five hundred and eighty-four dollars, at the Oceana County Savings Bank; value received; with interest at the rate of ten per cent. per annum after maturity.

[Signed.]    "'B. MOORE.'

"On the back of which note was the following:

" 'For value received, I hereby guarantee payment of the within note, and waive demand and notice of protest on same when due.

[Signed.]   " 'S. A. SHUFELT.

[Signed.]   " 'W. COOLIDGE.'

"*Fourth.* That about the time this note fell due the defendant Coolidge paid one-half of it to the bank, which still held and owned it; that the bank then sued Moore, Shufelt, and Coolidge in justice's court for the balance, and obtained judgment against them for the balance due upon the note; and that plaintiff, Shufelt, finally paid said judgment, which, with costs, amounted to the sum of three hundred and three and 30-100 dollars.

"And as conclusion of law I find that the defendant Coolidge is not liable to the plaintiff, nor are the defendants jointly so liable, and that plaintiff is not entitled to recover from the defendants as claimed in his declaration, and that judgment should be rendered in their favor and against the plaintiff for costs to be taxed, and it is accordingly so ordered."

Plaintiff's contention is that, inasmuch as judgment was rendered against Moore and Coolidge in the suit of White and others against them, and the proceeds of the first of the series of notes upon which plaintiff became surety were used to pay that judgment, Coolidge must be treated as a principal, and not as a cosurety. While it may be true that, as between the plaintiffs in that suit and Coolidge, the relation of suretyship ceased when judgment was entered, and his liability to plaintiffs became that of a principal judgment debtor, the same was not true as between Moore, the principal, and Coolidge, the accommodation indorser. Their relations were undisturbed. As between them, the judgment was Moore's debt. The liability of Coolidge had become fixed, but the same was true upon protest for non-payment of the note upon which judgment was had. The benefit received by Coolidge was no more substantial than if no judgment had been taken, and the note had been protested for non-payment. Coolidge cannot, then, be said to be a principal debtor on his own account.

The case of *Hartwell v. Smith*, 15 Ohio St. 200, relied

upon by plaintiff, is clearly distinguishable. There A. sued B., and caused an attachment to issue. B. was in partnership with Smith. Before levy, B., with S. as surety, executed a bond to A., conditioned that B. should perform the judgment of the court. Judgment was rendered against B., who, desiring to appeal, executed a bond upon appeal, with S. as surety. The clerk refused to accept the bond, and B., with consent and knowledge, procured Hartwell to sign the bond with S. The judgment was affirmed on appeal. B. died, and A. brought suit upon the appeal-bond against S. and H. S. paid the judgment, and brought suit against H. for contribution. H. insisted in defense that, as between the two bonds, the sureties in the latter had the right, in case payment was enforced, to assert, upon the principle of subrogation, all the rights of the creditor against the surety in the first bond; and, as Smith himself was such sole surety, and therefore ultimately liable to indemnify Hartwell, equity would not require Hartwell to make contribution. The court, referring to the appeal-bond, say:

"This undertaking the clerk declined to accept without further security. The debtor thereupon proposed to procure an additional surety, and to this Smith readily and unconditionally assented; not for the purpose of dividing his responsibility, but because the desired stay of execution could not otherwise be obtained. Hartwell, who had no interest in the matter, and was hitherto a stranger to the whole transaction, was accordingly procured as additional security. Under this state of facts, I think it might properly be said that Hartwell became a surety at the request of Smith as well as of the debtor, and that, in respect to him, they were both principals, and he surety. *Hunt v. Chambliss*, 7 Smedes & M. 532; *Cowan v. Duncan,* Meigs, 470.

"But it is enough to say that the *supersedeas* bond was executed with the express consent of the prior surety, unmistakably evidence by his being a party to it, and that he cannot, therefore, claim for it the effect of modifying his liability, which had been previously fixed. We think

it clear that, had the debt been collected by the creditor from Hartwell, he should be subrogated to the creditor's rights under the attachment bond, and that Smith cannot, therefore, call upon him for contribution."

In the present case the assent of Coolidge was for the express purpose of dividing his responsibility. He refused to become a surety unless Moore procured another surety with whom the responsibility would be divided. He was entitled to insist that the debt should be paid by Moore, otherwise that his responsibility should be divided. The old judgment was in no sense collateral to the new undertaking. That, so far as the plaintiffs therein were concerned, was discharged, and the new note ran to another. There remained no fixed securities on the faith of which Shufelt can be presumed to have incurred the obligation. There is no room for the application of the principle of subrogation. Coolidge did not consent that his liability upon the judgment should stand, nor did he contemplate that he should be the sole surety upon the note in question. Shufelt did not become surety because the creditor refused to accept of Coolidge, but because Coolidge refused to take the entire responsibility. He did not become surety for Moore and Coolidge, but Coolidge and Shufelt became cosureties for Moore. In fact, Shufelt first signed the obligation of suretyship, which was individual in character.

The old judgment must be regarded as Moore's debt, so far as the parties to this case are concerned, and the relation of Shufelt and Coolidge to the note in question as that of cosureties. They jointly guaranteed the payment of Moore's undertaking, the proceeds of which were used to pay Moore's debt, and Coolidge cannot be regarded as a principal debtor on his own account.

The judgment must therefore be affirmed.

LONG, GRANT, and DURAND, JJ., concurred. MONT-GOMERY, J., did not sit.