HARRAH *v.* DOHERTY.

1. BILLS AND NOTES—LIABILITY OF SUCCESSIVE INDORSERS.
   Successive indorsements of negotiable paper *prima facie* import, as between the several indorsers, a several and successive, and not a joint, obligation, whether the indorsements be made for accommodation or for value received, though it may be shown *aliunde* that the undertaking of the several indorsers is in fact joint.

2. SAME—SUBSEQUENT AGREEMENT—CONSIDERATION.
   An agreement by a subsequent accommodation indorser of a note with a prior accommodation indorser, after maturity of the note, to pay one-half thereof, is without consideration, and of no binding effect, in the absence of a precedent agreement changing the liability of the respective indorsers, as between themselves, from that imported by their successive indorsements.

3. SAME—EVIDENCE—ADMISSIONS.
   An admission by a subsequent indorser of a note that he signed under an agreement to become liable as cosurety is not established by evidence merely that he told the holder, after maturity, that he would see the prior indorser, and arrange so that the latter and himself would pay the note.

Error to Wayne; Smith (George W.), J., presiding. Submitted October 9, 1896.   Decided December 18, 1896.

*Assumpsit* by Charles W. Harrah against Patrick F. Doherty to recover one-half of the amount of a promissory note indorsed by both parties and paid by the plaintiff. From a judgment for plaintiff, defendant brings error. Reversed.

*James H. Pound (Edward H. Kennedy,* of counsel), for appellant.

*John J. Jackson (George W. Radford,* of counsel), for appellee.

Montgomery, J. On November 10, 1894, one John
T. McKeown made a note for $230, payable to the order
of plaintiff. This note was indorsed by plaintiff for Mc-
Keown's accommodation, and was subsequently indorsed
by defendant, also for the accommodation of the maker;
both indorsements being made before the note was dis-
counted. When the note matured, it was protested for
nonpayment, and notice given to the indorsers. Plaintiff
afterwards paid the note, and seeks to recover contribu-
tion from the defendant. The testimony offered by plain-
tiff tended to show that, before he indorsed the note,
McKeown agreed to procure another indorser; but there
was no evidence that this agreement was brought home
to the notice of defendant, or that defendant in any way
undertook to bind himself in other form than as the
indorsement indicated. The plaintiff also offered testi-
mony tending to show that after the note matured, the
maker having in the meantime died, the defendant agreed
with him, the plaintiff, to pay one-half of the note, but
that he subsequently failed to do so, and that plaintiff
thereupon made the payment and brought this suit.

The circuit judge charged the jury as follows:

" The evidence is conclusive that subsequent to plain-
tiff's indorsement, at a later time and date, when plaintiff
was not present, but very likely at his request, McKeown,
the maker, solicited and obtained the indorsement of
defendant, Doherty, who also indorsed it as an accommo-
dation to McKeown. * * * Upon the note itself their
names appear as successive indorsers. I think the law of
Michigan, as it now stands, will hold them to be indorsers,
and not cosureties. In my view of the case as it stands,
the verbal statements and understandings of each of these
parties, as testified to and had with McKeown when the
indorsement was had, are of no importance. The note
itself appeared to be drawn when the note was negotiated
by McKeown at the bank. The defendant, therefore,
would not, upon the note itself, or by reason of the
conversation with McKeown, be in law held liable to con-
tribute or refund in this suit one-half its amount."

This view of the law is fully sustained by the decisions of this court. In *McGurk* v. *Huggett*, 56 Mich. 187, upon facts almost identical with those in the present case, the plaintiff sued as a last indorser, and was permitted to recover. It was said:

"Successive indorsers to commercial paper do not, in this State, by virtue of such relation alone, stand in the situation of sureties to each other, and are not liable to contribution."

This is not only the rule in Michigan, but is the general rule elsewhere. In 1 Daniel, Neg. Inst. § 703, the rule is correctly stated:

" When several persons indorse a bill or negotiable note in succession, the legal effect is to subject them as to each other in the order they indorse. The indorsement imports a several and successive, and not a joint, obligation, whether the indorsements be made for accommodation or for value received, unless there be an agreement *aliunde* different from that evidenced by the indorsements."

While there is no doubt that it may be shown that the undertaking of the several indorsers is that of joint indorsers (see *Phillips* v. *Preston*, 5 How. 288; *Farwell* v. *Ensign*, 66 Mich. 600), yet in the present case there is no evidence bringing notice home to Doherty of any attempt by the plaintiff to limit his responsibility, as it was evidenced upon the face of the paper.

The circuit judge, however, after giving the rule as above stated, further charged that if defendant recognized his liability, and saw fit to obligate himself to share the loss of plaintiff, plaintiff would be entitled to recover one-half the amount paid by him on the note. Plaintiff's counsel rely, to sustain this instruction, upon the cases of *Phillips* v. *Preston* and *Farwell* v. *Ensign*, above cited. These cases fall short of sustaining plaintiff's contention. In *Phillips* v. *Preston* it appeared that there was an agreement between the plaintiff and defendant to become indorsers of certain notes, and divide between them any loss. As was said:

" The whole claim proceeds on the collateral agreement, and there is no pretense of grounding the suit, as holder or indorsee, on any promise contained in. the notes, or in the indorsements on them.   There is also a good consideration for this collateral agreement.   It is the promise of the plaintiff beforehand to lose one-half if the defendant would become surety with. him and lose the other half, and the actual payment afterwards of the whole by the plaintiff."

The case of *Farwell* v. *Ensign* was similar.   But in the present case there was no agreement whatever between the plaintiff and defendant until the liability of both became fixed.   The relation of plaintiff to the note was in no way changed by the alleged promise of defendant. His obligation remained the same as before.   There was no consideration upon which to base the alleged promise, and the court was in error in submitting the case to the jury upon this theory.

Plaintiff offered testimony to show that, after the note matured, Doherty went to the bank in which it was held, in response to a letter, and said, in a conversation with the president of the bank, that he was going over to see Harrah, and make arrangements so that he (Doherty) and Harrah would pay the note; and it is contended that this conversation amounts to an admission that he (Doherty) had signed the note under an agreement to become liable as cosurety.   It is sufficient answer to this to say that the circuit judge did not submit the case to the jury on any such theory, and that, as the testimony was disputed, we are not able to say that the jury found that such a conversation occurred; but, further than this, we do not think the testimony of itself sufficient to establish that there was any agreement to share the responsibility.   There was no other evidence, aside from this, of any agreement of that nature.   Under his indorsement, Doherty was primarily liable to the bank, and the statement which he made is entirely consistent with his true relations to the paper.

The case of *Shufelt* v. *Moore*, 93 Mich. 564, it is urged, should be decisive of the present case. But that case is clearly distinguishable. Coolidge was surety for Moore on a pre-existing debt. It was desired to get a further accommodation. Coolidge refused to indorse unless Moore should secure a cosurety. The opinion, at page 568, states:

"Coolidge did not consent that his liability upon the judgment should stand, nor did he contemplate that he should be the sole surety upon the note in question. Shufelt did not become surety because the creditor refused to accept of Coolidge, but because Coolidge refused to take the entire responsibility. He did not become surety for Moore and Coolidge, but Coolidge and Shufelt became cosureties for Moore. In fact, Shufelt first signed the obligation of suretyship, which was individual in character."

In that case there was an agreement antedating the indorsement, fixing the responsibility of the indorsers, and the case falls within the principle announced in *Phillips* v. *Preston* and *Farwell* v. *Ensign*. In the present case no such agreement was found by the jury, but a recovery was permitted on a naked promise, made after the liability was fixed, and upon no consideration passing to defendant.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.